## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## DIVISION

| | | |
|---|---|---|
| TONYA MANGELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00834-BP |
| | ) | |
| AMERICAN MULTI-CINEMA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO
## FIRST AMENDED COMPLAINT

Defendant American Multi-Cinema, Inc. ("Defendant) by and through its attorney, and for its answer to Plaintiff's Amended Complaint, hereby states:

### PARTIES

1.     Plaintiff MANGELS is a female resident of Platte County, Missouri.

**ANSWER:     Upon information and belief, Defendant admits the allegations in Paragraph of 1 of the Amended Complaint.**

2.     Defendant AMC is a Missouri for-profit corporation with its principal place of business located at 11500 Ash Street, Leawood, Kansas 66211.

**ANSWER:     Defendant admits the allegations in Paragraph 2 of the Amended Complaint.**

3.     Defendant AMC's Registered Agent, Corporate Creations Network, Inc., can be served with process at the address set forth in the caption above

**ANSWER:     Defendant admits the allegations in Paragraph 3 of the Amended Complaint.**

## JURISDICTION AND VENUE

4.      This action is brought to remedy unlawful discrimination and retaliation in violation of the Equal Pay Act at 29 U.S.C. § 206, *et seq.,* and in violation of 29 U.S.C. § 215(a)(3), a provision of the Fair Labor Standards Act ("FLSA") that establishes a cause of action for retaliation against employees who assert rights under the Equal Pay Act (collectively referred to herein as the "Equal Pay Act").

**ANSWER:      The allegations in Paragraph 4 of the Amended Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

5.      As it concerns the Equal Pay Act claims alleged herein, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

**ANSWER:      The allegations in Paragraph 5 of the Amended Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

6.      The discriminatory and retaliatory conduct discussed herein is also the subject of charges of discrimination that were previously filed with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* ("Title VII").

**ANSWER:      Defendant admits that Plaintiff filed charges of discrimination with the EEOC alleging violations of Title VII.  Defendant denies all remaining allegations in Paragraph 6 of the Amended Complaint.**

2

7.     Plaintiff has received Right to Sue letters from the EEOC pertaining to those charges of discrimination, and as such, Plaintiff has also satisfied all private, administrative and judicial prerequisites to the institution of this action.

**ANSWER:     Defendant lacks sufficient knowledge and information necessary to admit or deny whether Plaintiff has received Right to Sue letters from the EEOC and therefore, denies the same.  The remainder of the allegations in Paragraph of 7 of the Amended Complaint call for a legal conclusion, to which no response is required.  To the extent a response is required, Defendant denies the same.**

8.     Venue and jurisdiction are properly laid in this Court because this is a judicial district in which defendant resides within the meaning of 28 U.S.C. § 1391, and because this is a judicial district in which defendant (a Missouri corporation) is subject to the Court's personal jurisdiction with respect to this action pursuant to 28 U.S.C. § 1391. See also, Daimler AG v. Bauman, 571 U.S. 117, 138 (2014) (a corporation's place of incorporation is a "paradigm" basis general jurisdiction).  In addition, and because Plaintiff was authorized to work for Defendant periodically in Kansas City, Missouri from her home office, venue is also appropriate pursuant to 42 U.S.C. Section 2000e-5(f)(3) because this is a judicial district in Plaintiff would have worked but for the unlawful employment practices alleged here.

**ANSWER:     The allegations in Paragraph of 8 of the Amended Complaint call for a legal conclusion, to which no response is required.  To the extent a response is required, Defendant denies the same.**

3

## FACTS COMMON TO ALL COUNTS

9. At all times material hereto, the employees of AMC were acting in the course and scope of their employment with AMC, or were otherwise acting as agents of AMC, and their conduct was authorized and ratified by AMC.

**ANSWER: The allegations in Paragraph 9 of the Amended Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

10. Plaintiff is female.

**ANSWER: Defendant admits the allegations in Paragraph 10 of the Amended Complaint.**

11. Plaintiff has more than 25 years of professional experience in the field of marketing.

**ANSWER: Defendant lacks sufficient knowledge and information necessary to admit or deny the allegations in Paragraph of 11 of the Amended Complaint and therefore, denies the same.**

12. Plaintiff began her employment with AMC in 2009, and she was elevated to become a Vice President in 2013.

**ANSWER: Defendant admits the allegations in Paragraph 12 of the Amended Complaint.**

13. Plaintiff reported to AMC's Executive Vice President & Chief Marketing Officer, Stephen Colanero, between 2010 and 2019 before she was unlawfully terminated on September 30, 2019 with an effective date of October 3, 2019.

4

**ANSWER:** Defendant admits that Plaintiff reported to Stephan Colanero, Defendant's Executive Vice President & Chief Marketing Officer, from 2010 until her termination on September 30, 2019. Defendant denies all remaining allegations in Paragraph 13 of the Amended Complaint.

14.     Plaintiff's job title immediately prior to her termination was Vice President, Product Marketing.

**ANSWER:** Defendant admits the allegations in Paragraph 14 of the Amended Complaint.

15.     At all relevant times, Plaintiff performed substantially equal work with one or more of the following Vice Presidents in the AMC organization prior to her termination:

      a.   Vice President, Programming Promotion;

      b.   Vice President, Guest Engagement;

      c.   Vice President, Food & Beverage;

      d.   Vice President, Communication and Events; and,

      e.   Vice President, Pricing.

**ANSWER:** Defendant denies the allegations in Paragraph 15 of the Amended Complaint.

16.     At all relevant times, all of the above positions were held by male employees.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Amended Complaint and therefore, denies the same.

5

17.     The male Vice Presidents in the positions identified above were being paid between approximately 56% and 72% more than Plaintiff, including their base salaries and bonuses (which are based in part on base salary).

**ANSWER:     Defendant denies the allegations in Paragraph 17 of the Amended Complaint.**

18.     That difference amounts to between $117,000 and $149,000 more dollars per year paid to the male Vice Presidents compared to what AMC paid Plaintiff.

**ANSWER:     Defendant denies the allegations in Paragraph 18 of the Amended Complaint.**

19.     AMC also awarded larger stock grants to the male Vice Presidents.

**ANSWER:     Defendant denies the allegations in Paragraph 19 of the Amended Complaint.**

20.     At the time the stock grants were awarded, the male Vice Presidents received approximately $20,000 more in annual RSU/PSU stock grant targets.

**ANSWER:     Defendant denies the allegations in Paragraph 20 of the Amended Complaint.**

21.     At all relevant times, Plaintiff's job as Vice President, Product Marketing required substantially equal skill, effort, and responsibility as the male Vice President jobs identified above.

**ANSWER:     Defendant denies the allegations in Paragraph 21 of the Amended Complaint.**

6

22.     Plaintiff performed substantially equal work to each of the male Vice Presidents identified above for more than the past three years, and Plaintiff had more seniority at AMC than four of the five male Vice Presidents identified above.

**ANSWER:     Defendant denies the allegations in Paragraph 22 of the Amended Complaint.**

23.     On the AMC organization chart, Plaintiff's position was equal to the male positions identified above.

**ANSWER:     Defendant denies the allegations in Paragraph 23 of the Amended Complaint.**

24.     Plaintiff managed the second largest budget, and had the second highest number of employees on her team.

**ANSWER:     Defendant denies the allegations in Paragraph 24 of the Amended Complaint.**

25.     Similar to her male peers, Plaintiff's responsibilities were extremely broad and consistently required her to perform at a highly strategic and innovative level, and to generate revenue for AMC.

**ANSWER:     Defendant admits that all Vice Presidents, including Plaintiff, were expected to perform at a strategic and innovative level and she had varying responsibilities throughout her employment.  Defendant denies the remaining allegations in Paragraph 25 of the Amended Complaint.**

26.     After she was elevated to become a Vice President in 2013, Plaintiff was consistently rated as one of AMC's highest performing executives in annual reviews prior to requesting to have her compensation increased and equalized with male counterparts.

7

**ANSWER:** Defendant denies the allegations in Paragraph 26 of the Amended Complaint.

27. For example, in her 2014 review, Plaintiff received an overall "S+ Successful (Plus)" rating from AMC, and Mr. Colanero commented that "Tonya continues to grow and improve as an executive officer for the company, while delivering ongoing excellent results along the way."

**ANSWER:** Defendant admits that the quoted language is contained in Plaintiff's 2014 written performance review but avers that the document speaks for itself. Defendant denies the remaining allegations in Paragraph 27 of the Amended Complaint.

28. In her 2015 review, Plaintiff received an overall "S+ Successful (Plus)" rating from AMC, and Mr. Colanero commented that "Tonya continues to grow as a leader and an executive at AMC. ...Tonya continues to be a key contributor to a major area of the business that has continued an impressive series of growth years."

**ANSWER:** Defendant admits that the quoted language is contained in Plaintiff's 2015 written performance review but avers that the document speaks for itself. Defendant denies the remaining allegations in Paragraph 28 of the Amended Complaint.

29. In her 2016 review, Plaintiff received an overall "Exceeds Expectations" rating from AMC, and Mr. Colanero commented: "Really excellent performance for Tonya in 2016. As she points out, her area of responsibility continues to grow outside of Food & Beverage Marketing, and her contributions in these new areas has been strong. ...To recap, a very nice year for Tonya, where she was able to keep core activities going in a positive way, while delivering on multiple key initiatives over-and-above [her] day-to-day responsibilities."

8

**ANSWER:** Defendant admits the allegations in Paragraph 29 of the Amended Complaint but avers that Plaintiff's 2016 written performance review speaks for itself.

30. During each of those years, Plaintiff also received the CEO "Playing Offense" High Performance Recognition and bonus at AMC, which is described internally as "the highest form of recognition and reward to a select few who went above and beyond in playing offense, delivering extra-ordinary results through discretionary effort, and/or advancing the business with innovative thought leadership."

**ANSWER:** Defendant admits that Plaintiff received a CEO performance reward in 2015 (for performance in 2014) and in 2018 (for performance in 2017). Defendant denies all remaining allegations in Paragraph 30 of the Amended Complaint.

31. Prior to her termination, Plaintiff made numerous requests to have her compensation increased and equalized to an amount commensurate with her duties and responsibilities.

**ANSWER:** Defendant admits that throughout her employment Plaintiff made multiple requests that her compensation be increased. Defendant denies the remaining allegations in Paragraph 31 of the Amended Complaint.

32. For example, when Plaintiff's position was expanded in October 2016, Plaintiff requested and received a written commitment from Human Resources ("HR") and Stephen Colanero, and a verbal commitment from Mr. Colanero, that her compensation would be reviewed and increased during the year-end review process for 2017.

**ANSWER:** Defendant admits that Plaintiff requested that her compensation be increased in late 2016. Defendant denies all remaining allegations in Paragraph 32 of the Amended Complaint.

9

33.     In her 2017 review, Plaintiff received the highest possible overall rating at AMC: "Outstanding." She also received ratings of "Exceeds Expectations" in the areas of "Decision Making & Judgement" and "Integrity & Ethics."

**ANSWER:     Defendant admits the allegations in Paragraph 33 of the Amended Complaint.**

34.     Mr. Colanero also commented: "Tonya is an integral part of the senior leadership team in the Marketing department. Reflecting on 2017, which was a disappointing year for the industry, and AMC in particular, it is hard not to be impressed with the volume of accomplishments Tonya achieved. She brought to fruition several key initiatives from 2016 ... as well as creating new contributors to benefit AMC.... These are huge initiatives that drive profit for AMC, and wouldn't be what they are without Tonya's significant leadership/contributions. Additionally, she contributed in many other meaningful ways - from daily, unappreciated work (e.g. inventory risk management) to high-profile, cross-functional assignments...."

**ANSWER:     Defendant admits the allegations in Paragraph 34 of the Amended Complaint but avers that Plaintiff's 2017 written performance review speaks for itself.**

35.     Despite receiving AMC's highest possible rating during her 2017 review, and the additional accolades referenced above, Plaintiff's compensation was not increased, and it continued to lag behind comparable male Vice Presidents.

**ANSWER:     Defendant denies the allegations in Paragraph 35 of the Amended Complaint.**

36.     When Plaintiffs responsibilities were expanded again in April 2018, Plaintiff met with Carla Sanders-Chavarria (Senior Vice President, HR) on April 11, 2018 to discuss her

request to equalize her compensation with male counterparts, and to seek additional advice on how to tactfully approach that issue with Mr. Colanero.

**ANSWER:    Upon information and belief, Defendant admits that Plaintiff met with Ms. Chavarria, Defendant's Senior Vice President of Human Resources, on or about April 11, 2018.  Defendant denies the remaining allegations in Paragraph 36 of the Amended Complaint.**

37.    Plaintiff followed up with an email stating: "I greatly appreciate the conversation about the evolution of my position and your advice on how to tactfully approach the ongoing dialogue which is increasingly important to me at this stage in my career."

**ANSWER:    Defendant lacks sufficient knowledge and information necessary to admit or deny the allegations in Paragraph of 37 of the Amended Complaint and therefore, denied the same.**

38.    In May 2018, during a meeting with Mr. Colanero, Plaintiff again requested that her compensation be increased and equalized with comparable male Vice Presidents, and Mr. Colanero acknowledged that "AMC knows that it needs to make an adjustment."

**ANSWER:    Defendant denies the allegations in Paragraph 38 of the Amended Complaint.**

39.    In October 2018, Plaintiff also met with Mr. Colanero and Ms. Sanders-Chavarria regarding internal restructuring issues, new positions, and promotions for her team and others. During that discussion, Ms. Sanders-Chavarria acknowledged that AMC was "getting hit with" employee complaints related to gender equity and compliance with the Equal Pay Act.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny whether Plaintiff met with Ms. Chavarria and Mr. Colanero in October 2018 and**

11

**therefore, denies the same. Defendant denies the remaining allegations in Paragraph 39 of the Amended Complaint.**

40.     In November 2018, Plaintiff specifically requested in writing—to Mr. Colanero and Ms. Sanders-Chavarria—that the "Company review and equalize [her] compensation and bonus target with male colleagues in comparable positions considering seniority, required skill sets, position responsibilities, and quality of work."

**ANSWER:     Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 40 of the Amended Complaint and therefore, denies the same.**

41.     In late 2018, Mr. Colanero took all of his direct reports out for individual dinner for the holidays but excluded Plaintiff.

**ANSWER:     Defendant denies the allegations in Paragraph 41 of the Amended Complaint.**

42.     All of Plaintiff's requests for increased compensation were deflected, and Mr. Colanero suggested that Plaintiff should not ask for more, and should instead be happy with what she gets.

**ANSWER:     Defendant denies the allegations in Paragraph 42 of the Amended Complaint.**

43.     Mr. Colanero also expressed frustration about Plaintiff asking for her compensation to be equalized with her male counterparts.

**ANSWER:     Defendant denies the allegations in Paragraph 43 of the Amended Complaint.**

44.     On one occasion, Mr. Colanero falsely stated to Plaintiff that her compensation was within "equal range" of the comparable male Vice Presidents.

12

ANSWER: Defendant denies the allegations in Paragraph 44 of the Amended Complaint.

45.     At the time Mr. Colanero made that false statement, he was not aware that Plaintiff already knew about the compensation paid to the comparable male Vice Presidents.

ANSWER: Defendant denies the allegations in Paragraph 45 of the Amended Complaint.

46.     After receiving and deflecting Plaintiffs continued requests for increased compensation throughout 2018, Mr. Colanero performed Plaintiff's next, year-end performance review in February 2019.

ANSWER: Defendant admits that Plaintiff requested an increase to her compensation in 2018 and that Mr. Colanero presented Plaintiff with her 2018 annual written performance review in February 2019. Defendant denies all remaining allegations in Paragraph 46 of the Amended Complaint.

47.     In that review, Mr. Colanero rated Plaintiff as "exceed[ing] expectations" and "meet[ing] expectations" in all performance-related categories, but Mr. Colanero and AMC gave Plaintiff an overall review rating of "does not meet expectations."

ANSWER: Defendant admits Plaintiff received an overall rating of "does not meet expectations" in her 2018 written performance review. Defendant denies the remaining allegations in Paragraph 47 of the Amended Complaint.

48.     That was the lowest performance review given to any employee in the entire marketing department, and it is perceived as a highly negative rating capable of justifying adverse employment actions.

Case 4:19-cv-00834-BP   Document 6   Filed 01/17/20   Page 13 of 42

**ANSWER:** Defendant admits that "does not meet expectations" was the lowest score possible on a performance review for 2018 and that an individual receiving the score could face (or had faced) disciplinary action. Defendant denies the remaining allegations in Paragraph 48 of the Amended Complaint.

49. Mr. Colanero's and AMC's purported basis for the negative review related to an HR issue involving a male co-worker who was a Vice President, and an anonymous, false allegation that Plaintiff consumed too much alcohol at a non-sponsored event at an off-site location after business hours during a business trip to New Orleans in January of 2018.

**ANSWER:** Defendant admits that Plaintiff received a final written warning in 2018 based on an investigation relating, in part, to Plaintiff's conduct during Defendant's annual management conference held in January 2018 in New Orleans. Defendant further admits that the results of its investigation resulted in Plaintiff receiving the "does not meets" overall performance review score for 2018. Defendant denies the remaining allegations in Paragraph 49 of the Amended Complaint.

50. These purported issues—which were never raised or "investigated" by AMC or Mr. Colanero until *after* Plaintiff began requesting compensation comparable to her male counterparts, and were never raised or "investigated" by AMC or Mr. Colanero until nearly six months after they allegedly occurred—were fully addressed by AMC in the spring of 2018, and there was no reason for re-visiting the same issues once again during Plaintiffs 2018 year-end review in February of 2019.

**ANSWER:** Defendant denies the allegations in Paragraph 50 of the Amended Complaint.

14

51.     During AMC's original "investigation" into those false allegations, Human Resources conducted a very open and personally damaging investigation calculated to smear Ms. Mangels' reputation with leading questions and related efforts to intimidate and bully fellow co-workers.

**ANSWER:     Defendant denies the allegations in Paragraph 51 of the Amended Complaint.**

52.     Plaintiff was also held to a different standard than her male counterparts, and Plaintiff was forced to undergo EAP counseling unlike any of the male co-workers allegedly involved in the same or similar conduct.

**ANSWER:     Defendant denies the allegations in Paragraph 52 of the Amended Complaint.**

53.     To compound matters further, Plaintiff was also placed on a final, written warning at that time because Plaintiff received a previous warning in 2015 for an accounting mistake that was caused by Mr. Colanero.

**ANSWER:     Defendant admits Plaintiff received a final written warning in June 2018.   Defendant denies all remaining allegations in Paragraph 53 of the Amended Complaint.**

54.     In particular, Mr. Colanero incorrectly budgeted some expenses as "marketing" expenses instead of calling them "capital expenditures," and he instructed Plaintiff to sign off on his characterization of the expenses in 2015.

**ANSWER:     Defendant denies the allegations in Paragraph 54 of the Amended Complaint.**

55.     The 2015 accounting issues also involved expense violations by other employees of AMC that reported to Mr. Colanero, and that did not report to Plaintiff.

**ANSWER:     Defendant admits that in 2015 several employees were found to have violated Defendant's policies relating to business expenses and that Plaintiff was not their direct supervisor.   Defendant denies the remaining allegations in Paragraph 55 of the Amended Complaint.**

56.     Upon information and belief, AMC intentionally blamed Plaintiff and three other employees for the above issues in 2015—with no accountability from Mr. Colanero—because any blame attributable to Mr. Colanero would have required reporting to the Board of Directors given Mr. Colanero's Executive Vice President status, which in turn may have required disclosure in AMC's public filings.

**ANSWER:     Defendant denies the allegations in Paragraph 56 of the Amended Complaint.**

57.     AMC ultimately acknowledged the impropriety of blaming Plaintiff for the above issues in 2015 when it later *reversed* its decision to reduce her bonus by 50%, and when it awarded Ms. Mangels her full company bonus at 121.5% of the target and also awarded Plaintiff the prestigious CEO award.

**ANSWER:     Defendant denies the allegations in Paragraph 57 of the Amended Complaint.**

58.     Nevertheless, Mr. Colanero relied on that additional, false accusation from 2015 in order to justify his retaliatory decision to place Plaintiff on a "final" written warning in June of 2018.

16

**ANSWER:** **Defendant denies the allegations in Paragraph 58 of the Amended Complaint.**

59.    Regardless of what occurred in June of 2018, Mr. Colanero's and AMC's decision to re-raise the same issues in February 2019 was additionally discriminatory and retaliatory because Plaintiff was once again treated differently from her male counterparts in relation to her 2018 year-end review.

**ANSWER:** **Defendant denies the allegations in Paragraph 59 of the Amended Complaint.**

60.    For example, unlike Plaintiff, the male Vice President involved in the issues referenced above was not penalized *once again* during his 2018 year-end review.

**ANSWER:** **Defendant denies the allegations in Paragraph 60 of the Amended Complaint.**

61.    The issues were never discussed or re-hashed during his 2018 year-end review.

**ANSWER:** **Defendant denies the allegations in Paragraph 61 of the Amended Complaint.**

62.    In addition, and unlike Plaintiff, the same male Vice President referenced above also received an overall rating of "meets expectations" in his 2018 year-end review.

**ANSWER:** **Defendant admits that the Vice President referred to by Plaintiff received an overall rating of "meets expectations" in his 2018 performance review. Defendant denies the remaining allegations in Paragraph 62 of the Amended Complaint.**

63.    Plaintiff's highly negative rating in her 2018 year-end review was also contradicted by the increased level of trust and responsibility Plaintiff held in the company *after*

17

the spring of 2018 when the above issues were originally addressed and resolved in June of 2018.

**ANSWER: Defendant denies the allegations in Paragraph 63 of the Amended Complaint.**

64. For example, after the issues were resolved, Plaintiff was promoted with the assignment of additional team members, an expanded budget, and additional responsibilities. Plaintiff was also tasked with leading more strategic initiatives.

**ANSWER: Defendant denies the allegations in Paragraph 64 of the Amended Complaint.**

65. Plaintiff was also trusted with the highest-level responsibilities in the organization, including presenting to AMC's Chief Executive Officer, the leadership team, and AMC's top clients on numerous occasions.

**ANSWER: Defendant admits that Plaintiff's core job responsibilities did not change after she received a final written warning in June 2018. Defendant denies the remaining allegations in Paragraph 65 of the Amended Complaint.**

66. Plaintiff was also selected to the "LEAP promotion-ready officers group" in the second quarter of 2018.

**ANSWER: Defendant denies the allegations in Paragraph 66 of the Amended Complaint.**

67. Despite the above, Mr. Colanero gave Plaintiff an overall 2018 review rating of "does not meet expectations" in February 2019.

18

**ANSWER:** **Defendant admits Plaintiff received an overall 2018 performance review rating of "does not meet expectations" in February 2019. Defendant denies the remaining allegations in Paragraph 67 of the Amended Complaint.**

68.     Mr. Colanero acknowledged that Plaintiffs performance was "superior," but he explained that he needed to "send a message to [Plaintiff]."

**ANSWER:** **Defendant denies the allegations in Paragraph 68 of the Amended Complaint.**

69.     Mr. Colanero's desire to "send a message to [Plaintiff]" was discriminatory and retaliatory, and it was motivated by views that women should behave differently than men.

**ANSWER:** **Defendant denies the allegations in Paragraph 69 of the Amended Complaint.**

70.     After Plaintiff learned that she was receiving an overall rating of "does not meet expectations," she asked Mr. Colanero how the rating was going to affect her salary review.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Amended Complaint and therefore, denies the same.**

71.     She explained her belief that "we have a pay equity issue and we need to address it."

**ANSWER:** **Defendant denies the allegations in Paragraph 71 of the Amended Complaint.**

72.     She also confronted Mr. Colanero with knowledge she gained from a compensation spreadsheet Mr. Colanero shared with her in March of 2018.

19

**ANSWER:** Defendant admits that Plaintiff first informed Mr. Colanero in or about February 2019 that he had inadvertently shared with her via an email an un-redacted chart containing compensation information regarding other employees. Defendant denies the remaining allegations in Paragraph 72 of the Amended Complaint.

73.     Mr. Colanero became upset when he learned that Plaintiff knew about the information reflected in that spreadsheet, and he told Plaintiff that he "did not intend" to send her that information.

**ANSWER:** Defendant admits that Mr. Colanero informed Plaintiff that he intended to send her only information regarding her compensation and the compensation of her direct reports (as was his normal practice). Defendant denies the remaining allegations in Paragraph 73 of the Amended Complaint.

74.     Despite that frank conversation, nothing was ever done about the wage disparities, and no productive dialogue ever occurred on the issue.

**ANSWER:** Defendant denies the allegations in Paragraph 74 of the Amended Complaint.

75.     Mr. Colanero and AMC also relied on the discriminatory and retaliatory "does not meet expectations" rating as a plausible (but false) reason for refusing to equalize Plaintiffs compensation in 2019.

**ANSWER:** Defendant denies the allegations in Paragraph 75 of the Amended Complaint.

76.     Mr. Colanero and AMC also relied on the discriminatory and retaliatory "does not meet expectations" rating to decrease Plaintiffs bonus by 50% and limit her cost-of-living increase to 2% (well below the company average that year).

**ANSWER:** Defendant admits that Plaintiff received a 2% cost-of living increase in 2019 (which is the maximum increase for an associate who receives a "does not meet expectations" performance review score). Defendant denies the remaining allegations in Paragraph 76 of the Amended Complaint.

77. Based on the unlawful conduct outlined above, Plaintiff filed a Charge of Discrimination on May 2, 2019 with the EEOC, and complained in good faith about perceived violations of the Equal Pay Act and Title VII.

**ANSWER:** Upon information and belief, Defendant admits that Plaintiff filed a charge of discrimination with the EEOC on or about May 2, 2019, alleging violations of the Equal Pay Act and Title VII. Defendant denies the remaining allegations in Paragraph 77 of the Amended Complaint.

78. In response, AMC immediately denied the allegations, misrepresented Plaintiff's job duties, skills, supervision, effort, and responsibilities, provided incomplete and inaccurate information regarding Plaintiff's job performance to the EEOC, and embarked on a campaign to continue retaliating against Plaintiff for engaging in protected activity.

**ANSWER:** Defendant admits that it denied the allegations made by Plaintiff in her EEOC charge. Defendant denies the remaining allegations in Paragraph 78 of the Amended Complaint.

79. For example, on August 20, 2019, AMC announced a reduction in force ("RIF"), and Plaintiff **did not have prior knowledge of the RIF.**

**ANSWER:** Defendant admits that it announced a reduction in force impacting employees at its headquarters in Leawood, Kansas on August 20, 2019. Defendant lacks

21

sufficient knowledge to admit or deny the remaining allegations in Paragraph 79 of the Amended Complaint and therefore, denies the same.

80.     Despite her lack of prior knowledge of the RIF, AMC falsely accused her of providing advance knowledge of the RIF to her team.

**ANSWER:     Defendant denies the allegations in Paragraph 80 of the Amended Complaint.**

81.     Thereafter, AMC's HR department began an "investigation" and interviewed several members of her team.

**ANSWER:     Defendant admits that an investigation was conducted in August and September 2019 relating to conduct by Plaintiff in August 2019 and that several of Plaintiff's direct reports were interviewed as part of the investigation.  Defendant denies the remaining allegations in Paragraph 81 of the Amended Complaint.**

82.     The brand new RIF "investigation" was unfounded, and only served as further evidence of AMC's retaliation, and its continuing effort to generate a pretextual basis for terminating Plaintiff, for the following reasons:

a.    Prior to the August 20, 2019 RIF announcement, AMC announced a formal Profit Improvement Plan in its August 8, 2019 Quarter 2 earnings call including the targeting of $50 million in cost savings (a transcript of which is posted online) and John McDonald, AMC's Executive Vice President of Operations, had internally posted several company-wide "calls to action" about expense reduction efforts. Public industry resources also reported 2020 as a soft year for the box office, significantly down versus 2019. In addition, AMC's stock, once over $33 per share, began trading between $8.86-$11.38 per share over the couple months

22

prior to the announcement. In other words, significant public information existed that revealed a challenging business climate for AMC, and the publicly available information sparked general long-term concerns about a RIF within AMC and rumors were widespread.

b.  AMC conducted its "investigation" into the RIF matter in an intimidating manner by bullying interviewees on Plaintiffs team and when interviewing Plaintiff, in a manner designed to instill fear versus encourage a trusting dialogue.

c.  The questioning of Plaintiff was badgering, threatening, and confrontational.

d.  AMC also made further attempts to damage Plaintiffs credibility with repeated interviews of her team conducted in a manner designed to scare her team and others in the department the week of the RIF, which was already a highly stressful time.

e.  During her interview with Human Resources on August 26, 2019, Plaintiff confirmed that she had no prior knowledge of the RIF and could not have provided advance knowledge of RIF to her team. She did confirm, however, that she demonstrated authenticity and leadership to her team when she advised them to focus on their great work, key business contributions, approved budgets and matters within their control.

f.  Prior to her August 26, 2019 interview, Plaintiff also heard directly from Mr. Colanero that HR was planning to contact her in order to discuss the RIF issue generally.

g.  Plaintiff emailed Ms. Sanders-Chavarria on August 22, 2019—in advance of the August 26 meeting—in order to preempt the issues and explain that there should be no reason for concern.

h.  In her email, Plaintiff invited Ms. Sanders-Chavarria to take 10-15 minutes in order "to briefly touch base with a couple of folks on [her] team about the agenda and [her] communications, such as Lauren Doyle, Ellen Blanner, Ryan Davis, who were in [her] staff meeting [the previous] week." Plaintiff also suggested that Ms. Sanders-Chavarria was "[c]ertainly welcome to speak to any others as well...."

i.  Plaintiff also explained that the "closing of [her] meeting was all in positive intention and encouraging the team. [Plaintiff] recognized many peoples good work, the workloads, results, some new projects like NFL and the tough climate ahead which would make our efforts important to deliver. [Plaintiff] spoke about [AMC's] budget review going smoothly due in part to all of their work with [Plaintiff] on the planning, being strategic and thinking bottom-up. We didn't inflate estimates, were supporting many key revenue drivers and it served us well as we got most everything approved. [Plaintiff] went on to suggest they be aware and sensitive to others, because some had significant cuts or maybe didn't have as many growth or revenue initiatives going on. [Plaintiff] said something to the effect that it could cause potential jealousies and anxiety given the business climate so consider being overly understanding and considerate in the coming weeks."

24

j.   Plaintiff also explained that she "suggested [to her team] not to get caught up in speculation, rumors, [to] keep their heads down, [to] focus on the work, [to] stay out of the 'fray.'" Plaintiff explained that she told her team to "be confident and feel grateful they were working on key efforts which should position them well regardless of the business climate in [Plaintiff's] own opinion. Plaintiff also explained that "[her] intent was to be authentic in [her] communication, shift focus to what was in their control, laser in on the results but encourage compassion for others given the stressful times." Plaintiff also explained that "[she] didn't have any details about lay-offs and did not tell the team lay-offs were happening."

k.   On the same day Plaintiff sent the above email to Ms. Sanders-Chavarria, Plaintiff attended a photoshoot with members of her team. One of Plaintiff's team members approached Plaintiff to explain that someone from Human Resources had already been calling members of Plaintiff's team multiple times. The team member described the contact with HR as very scary, harassing, and doubling back with questions. Plaintiff chose not to engage any further with the team member at that time.

l.   Within the next couple days, another team member also affirmatively commented to Plaintiff, in essence, "I don't know what is going on (with HR), but it seems like some sort of witch hunt or something." The team member's facial expressions were grim when they shared the information. Plaintiff also advised that team member that it was probably best to not discuss the issue any further.

25

**ANSWER:** The allegations in Paragraph 82 do not comply with Fed.R.Civ.P. 10(b) and therefore, no response is required. To the extent a response is required, Defendant denies the same.

83. In the midst of AMC's unsupported RIF "investigation," the parties also participated in a voluntary mediation on September 20, 2019 related to Plaintiff's May 2, 2019 Charge of Discrimination filed with the EEOC.

**ANSWER:** Defendant admits that in July 2019 it agreed to participate in a confidential, voluntary mediation with Plaintiff on September 20, 2019. Defendant denies the remaining allegations in Paragraph 83 of the Amended Complaint.

84. Upon information and belief, AMC delayed action on its unsupported RIF "investigation" until after the mediation in order to determine whether or not it could utilize the mediation process in order to force Plaintiff to sever her employment relationship with AMC.

**ANSWER:** Defendant denies the allegations in Paragraph 84 of the Amended Complaint.

85. After the mediation failed, Plaintiff became concerned that AMC had no interest in resolving the pay equity issues addressed in her May 2, 2019 Charge of Discrimination.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's subjective feelings alleged in Paragraph 85 of the Amended Complaint and therefore, denies the same.

86. Plaintiff also became concerned that AMC was only interested in finding a way to eliminate Plaintiff.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's subjective feelings alleged in Paragraph 86 of the Amended Complaint and therefore, denies the same.

87. Plaintiff had no intention of terminating her career at AMC, however, and on September 23, 2019, Plaintiff sent an email to Mr. Colanero and Carla Sanders-Chavarria explaining her sincere desire to remain working at AMC.

**ANSWER:** Defendant admits Plaintiff sent an email to Mr. Colanero and Ms. Chavarria on September 23, 2019. Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 87 of the Amended Complaint and therefore, denies the same.

88. Plaintiff explained that she raised the pay equity issues in good faith, and she appealed to AMC's sense of fairness in resolving those issues.

**ANSWER:** Defendant admits that the sentiments contained in Paragraph 88 of the Amended Complaint were made by Plaintiff in her September 23, 2019 email but avers that the email speaks for itself.

89. Plaintiff explained that, "[i]f you are open to it, I would welcome a discussion on how to move forward" by remaining with AMC.

**ANSWER:** Defendant admits that the statement contained in Paragraph 89 of the Amended Complaint was made by Plaintiff in her September 23, 2019 email but avers that the email speaks for itself.

90. Plaintiff explained: "I have always put my heart and soul into my work at AMC and remain committed to that endeavor. I have continuously grown as an executive and leader in this Company, and, together with my team, have delivered very strong results consistently over

27

the years with increasing breadth of impact. In addition, I continue to spearhead strategic innovations and explorations for the future growth of AMC. My relationships with internal cross-functional partners, dotted line support to Programming/F&B and key vendor partners are incredibly strong. The engagement and teamwork within my group has never been more solid. We are achieving some phenomenal accomplishments and realizing incredible synergies. I'm completely invested and have a great deal of equity built up over the last 10 years."

**ANSWER:** **Defendant admits that the statements contained in Paragraph 90 of the Amended Complaint were made by Plaintiff in her September 23, 2019 email but avers that the email speaks for itself.**

91.     Despite the above, Plaintiff was summoned to a meeting with Mr. Colanero and Carla Sanders-Chavarria on September 30, 2019, and she was informed of her immediate termination effective on October 3, 2019.

**ANSWER:** **Defendant admits that Mr. Colanero and Ms. Chavarria notified Plaintiff of her termination on September 30, 2019. Defendant denies the remaining allegations in Paragraph 91 of the Amended Complaint.**

92.     Ms. Sanders-Chavarria read from a script in order to explain the pretextual basis for Plaintiff's termination, which related back to the unfounded and retaliatory RIF "investigation" referenced above.

**ANSWER:** **Defendant denies the allegations in Paragraph 92 of the Amended Complaint.**

93.     Plaintiff was actually fired because of her sex, female, and because AMC retaliated against her for engaging in protected activity on multiple occasions.

28

**ANSWER:** **Defendant denies the allegations in Paragraph 93 of the Amended Complaint.**

94.     As a direct and proximate result of the wrongful, unlawful, retaliatory, and discriminatory policies, practices, and conduct described above and in the following paragraphs, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, economic damages, emotional distress, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and reputational harm, and will continue to suffer the same unless and until this Court grants the requested relief.

**ANSWER:** **Defendant denies the allegations in Paragraph 94 of the Amended Complaint.**

95.     Defendant's conduct was wanton, malicious, willful, or outrageous, was done with reckless disregard of its consequences, or was done with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages in an amount that will serve to punish Defendant, and will serve to deter Defendant and others, from like conduct in the future.

**ANSWER:** **Defendant denies the allegations in Paragraph 95 of the Amended Complaint.**

96.     Plaintiff also seeks compensatory damages, lost wages, back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest, punitive damages, equitable relief in the form of front pay, and reasonable attorneys' fees.

**ANSWER:** **Defendant denies the allegations in Paragraph 96 of the Amended Complaint.**

29

97.     To the extent any back pay or lost wages are awarded, Plaintiff also seeks an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

**ANSWER:   Defendant denies the allegations in Paragraph 97 of the Amended Complaint.**

98.     Plaintiff also seeks an award of three years of back pay or lost wages based on Defendant's willful violations of the Equal Pay Act.

**ANSWER:   Defendant denies the allegations in Paragraph 98 of the Amended Complaint.**

### COUNT I—DISCRIMINATION (EQUAL PAY ACT)

99.     Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

**ANSWER:   Defendant incorporates its responses to Paragraphs 1-98 of Plaintiff's Amended Complaint as if fully set forth herein.**

100.    Defendant employed the Plaintiff and one or more members of the opposite sex in positions requiring substantially equal skill, effort, and responsibility.

**ANSWER:   Defendant denies the allegations in Paragraph 100 of the Amended Complaint.**

101.    Plaintiff and one or more members of the opposite sex performed their positions under similar working conditions.

**ANSWER:    Defendant denies the allegations in Paragraph 101 of the Amended Complaint.**

102.    Plaintiff was paid a lower wage than the members of the opposite sex who were performing substantially equal work under similar working conditions.

30

**ANSWER:** Defendant denies the allegations in Paragraph 102 of the Amended Complaint.

103. Plaintiff is now suffering and will continue to suffer irreparable injury and damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**ANSWER:** Defendant denies the allegations in Paragraph 103 of the Amended Complaint.

104. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

**ANSWER:** Defendant denies the allegations in Paragraph 104 of the Amended Complaint.

105. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered past and future pecuniary losses, humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, related compensatory damages, and the additional damages alleged in the preceding paragraphs.

**ANSWER:** Defendant denies the allegations in Paragraph 105 of the Amended Complaint.

106. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided in 29 U.S.C. § 216(b).

**ANSWER:** Defendant denies the allegations in Paragraph 106 of the Amended Complaint.

107. To the extent any back pay or lost wages are awarded, Plaintiff also seeks an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

31

**ANSWER:** Paragraph 107 of the Amended Complaint constitutes a prayer for relief to which neither an admission nor denial is required. To the extent a response is required, Defendant denies the same.

108. Plaintiff also seeks an award of three years of back pay or lost wages based on Defendant's willful violations of the Equal Pay Act.

**ANSWER:** Defendant denies the allegations in Paragraph 108 of the Amended Complaint.

109. Defendant acted with malice, willfulness, or reckless indifference to the federally protected rights of Plaintiff.

**ANSWER:** Defendant denies the allegations in paragraph 109 of the Amended Complaint

### COUNT II—RETALIATION (EQUAL PAY ACT)

110. Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

**ANSWER:** Defendant incorporates its responses to Paragraphs 1-109 of Plaintiff's Amended Complaint as if fully set forth herein.

111. Plaintiff complained to Defendant that she was being discriminated against on the basis of sex, and Plaintiff filed an EEEOC charge asserting rights under the Equal Pay Act and Title VII.

**ANSWER:** Defendant admits that Plaintiff filed an EEOC charge asserting rights under the Equal Pay Act and Title VII. Defendant denies the remaining allegations in Paragraph 111 of the Amended Complaint.

112.     Plaintiff reasonably believed that she was being discriminated against on the basis of her sex.

**ANSWER:     Defendant denies the allegations in Paragraph 112 of the Amended Complaint.**

113.     Plaintiff was subjected to materially adverse actions and was later discharged after she complained to her employer and filed an EEOC charge.

**ANSWER:     Defendant denies the allegations in Paragraph 113 of the Amended Complaint.**

114.     The Plaintiff's treatment and discharge might well dissuade a reasonable worker in the same or similar circumstances from making or supporting a charge of discrimination.

**ANSWER:     Defendant denies the allegations in Paragraph 114 of the Amended Complaint.**

115.     There was a causal connection between Plaintiff's activity (i.e. her informal complaints to her employer and her EEOC charge) and the materially adverse actions and discharge imposed by Defendant.

**ANSWER:     Defendant denies the allegations in Paragraph 115 of the Amended Complaint.**

116.     Plaintiff is now suffering and will continue to suffer irreparable injury and damages as a result of Defendant's discriminatory practices unless and until this Court grants relief

**ANSWER:     Defendant denies the allegations in Paragraph 116 of the Amended Complaint.**

33

117.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

**ANSWER:    Defendant denies the allegations in Paragraph 117 of the Amended Complaint.**

118.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered past and future pecuniary losses, humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, related compensatory damages, and the additional damages alleged in the preceding paragraphs.

**ANSWER:    Defendant denies the allegations in Paragraph 118 of the Amended Complaint.**

119.    Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided in 29 U.S.C. § 216(b).

**ANSWER:    Defendant denies the allegations in Paragraph 119 of the Amended Complaint.**

120.    To the extent any back pay or lost wages are awarded, Plaintiff also seeks an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

**ANSWER:    Paragraph 120 of the Amended Complaint constitutes a prayer for relief to which neither an admission nor denial is required.  To the extent a response is required, Defendant denies the same.**

121.    Plaintiff also seeks an award of three years of back pay or lost wages based on Defendant's willful violations of the Equal Pay Act.

**ANSWER:    Defendant denies the allegations in Paragraph 121 of the Amended Complaint.**

34

122.    Defendant acted with malice, willfulness, or reckless indifference to the federally protected rights of Plaintiff.

**ANSWER:    Defendant denies the allegations in Paragraph 122 of the Amended Complaint.**

## COUNT III—DISCRIMINATION (TITLE VII)

123.    Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

**ANSWER:    Defendant incorporates its responses to Paragraphs 1-122 of the Amended Complaint as if fully set forth herein.**

124.    Defendant employed the Plaintiff and one or more members of the opposite sex in positions requiring substantially equal skill, effort, and responsibility.

**ANSWER:    Defendant denies the allegations in Paragraph 124 of the Amended Complaint.**

125.    Plaintiff and one or more members of the opposite sex performed their positions under similar working conditions.

**ANSWER:    Defendant denies the allegations in Paragraph 125 of the Amended Complaint.**

126.    Plaintiff was paid a lower wage than the members of the opposite sex who were performing substantially equal work under similar working conditions.

**ANSWER:    Defendant denies the allegations in Paragraph 126 of the Amended Complaint.**

35

127.    Defendant discriminated against Plaintiff with respect to her compensation, promotion, terms, conditions, or privileges of her employment because of her sex in violation of Title VII and/or otherwise a

**ANSWER:    Defendant denies the allegations in Paragraph 127 of the Amended Complaint.**

128.    Plaintiff is now suffering and will continue to suffer irreparable injury and damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**ANSWER:    Defendant denies the allegations in Paragraph 128 of the Amended Complaint.**

129.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

**ANSWER:    Defendant denies the allegations in Paragraph 129 of the Amended Complaint.**

130.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered past and future pecuniary losses, humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, related compensatory damages, and the additional damages alleged in the preceding paragraphs.

**ANSWER:    Defendant denies the allegations in Paragraph 130 of the Amended Complaint.**

131.    Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

36

**ANSWER:** **Defendant denies the allegations in Paragraph 131 of the Amended Complaint.**

132.    Defendant acted with malice, willfulness, or reckless indifference to the federally protected rights of Plaintiff.

**ANSWER:** **Defendant denies the allegations in Paragraph 132 of the Amended Complaint.**

**COUNT IV—RETALIATION (TITLE VII)**

133.    Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

**ANSWER:** **Defendant incorporates its responses to Paragraphs 1-132 of the Amended Complaint as if fully set forth herein.**

134.    Plaintiff complained to Defendant that she was being discriminated against on the basis of sex, and Plaintiff filed an EEOC charge asserting rights under the Equal Pay Act and Title VII.

**ANSWER:** **Defendant admits that Plaintiff filed an EEOC charge alleging violations of the Equal Pay Act and Title VII.  Defendant denies the remainder of the allegations in Paragraph 134 of the Amended Complaint.**

135.    Plaintiff reasonably believed that she was being discriminated against on the basis of sex.

**ANSWER:** **Defendant denies the allegations in Paragraph 135 of the Amended Complaint.**

136.    Plaintiff was subjected to materially adverse actions and was later discharged after she complained to her employer and filed an EEOC charge.

37

**ANSWER:** **Defendant denies the allegations in Paragraph 136 of the Amended Complaint.**

137.    The Plaintiff's treatment and discharge might well dissuade a reasonable worker in the same or similar circumstances from making or supporting a charge of discrimination.

**ANSWER:** **Defendant denies the allegations in Paragraph 137 of the Amended Complaint.**

138.    There was a causal connection between Plaintiff's activity (i.e. her informal complaints to her employer and her EEOC charge) and the materially adverse actions and discharge imposed by Defendant.

**ANSWER:** **Defendant denies the allegations in Paragraph 138 of the Amended Complaint.**

139.    Plaintiff is now suffering and will continue to suffer irreparable injury and damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**ANSWER:** **Defendant denies the allegations in Paragraph 139 of the Amended Complaint.**

140.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

**ANSWER:** **Defendant denies the allegations in Paragraph 140 of the Amended Complaint.**

141.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered past and future pecuniary losses, humiliation, emotional pain, distress, suffering,

38

inconvenience, mental anguish, loss of enjoyment of life, related compensatory damages, and the additional damages alleged in the preceding paragraphs.

**ANSWER: Defendant denies the allegations in Paragraph 141 of the Amended Complaint.**

142. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

**ANSWER: Defendant denies the allegations in Paragraph 142 of the Amended Complaint.**

143. Defendant acted with malice, willfulness, or reckless indifference to the federally protected rights of Plaintiff.

**ANSWER: Defendant denies the allegations in Paragraph 143 of the Amended Complaint.**

## DEFENDANT'S GENERAL DENIAL

**To the extent not expressly admitted herein, Defendant denies all allegations contained in the Amended Complaint.**

## DEFENDANT'S AFFIRMATIVE AND OTHER DEFENSES

**Without assuming any burden of proof that by law is not otherwise Defendant's, Defendant asserts the following affirmative and other defenses:**

**1. Plaintiff's Amended Complaint, in whole or in part, against Defendant fails to state a claim or cause of action for which relief may be granted.**

**2. Plaintiff's claims against Defendant may be barred by the applicable statute of limitations for any actions that occurred outside the relevant time.**

39

3.	Plaintiff's claims are barred because Defendant's actions were made in good faith and with reasonable grounds to believe its conduct was in full compliance with the relevant laws.

4.	Plaintiff's Amended Complaint, in whole or in part, against Defendant is barred because the alleged actions of Defendant, which are denied, were not intentional, malicious, willful or reckless.

5.	Defendant states Plaintiff has failed to mitigate her damages, if any.

6.	If Plaintiff has been damaged as alleged, which is denied, her damages have been caused by her own intentional or negligent acts or omissions, or by intentional or negligent acts or omissions of those other than Defendant, or for which Defendant is not responsible.

7.	Plaintiff's claim is barred because even if an impermissible factor had been a motivating factor in any decision made or action taken by Defendant, which Defendant denies, Defendant would have taken the same actions in the absence of any impermissible factor.

8.	Defendant is not liable for punitive damages because neither Defendant, nor any of its employees sufficiently high in its corporate hierarchy, committed any act with malice, intent, willfulness, or reckless indifference to Plaintiff's protected rights, or approved, authorized or ratified, or had actual knowledge, of any such acts.

9.	Plaintiff's Amended Complaint fails to allege facts sufficient to state a claim that would support an award of actual, compensatory, or punitive damages against Defendant.

10. Plaintiff's claim for punitive damages is barred because the request seeks damages in violation of the Missouri State Constitution and U.S. Constitution.

11. If Plaintiff's alleged comparators were deemed to perform work of equal skill, effort or responsibility under similar working conditions, which is denied, then any compensation disparities are based on factors other than gender.

12. Defendant is not liable for punitive damages because it has at all times made a good faith effort to comply with the laws, has complied with all applicable laws to the best of its knowledge and belief, and any action by a manager contrary to these efforts is in violation of Defendant's policies and procedures.

13. Defendant is not liable for punitive damages because its alleged conduct was not outrageous and its actions and/or conduct were not intentional, taken with evil motive, or in reckless indifference to the rights of others.

14. The actions taken by Defendant with respect to Plaintiff were within the business judgment of Defendant.

15. Defendant reserves the right to supplement and amend its affirmative and other defenses as warranted by the facts of the case. Defendant affirmatively states that it will rely upon each and every affirmative defense or other avoidance provided by the Federal Rules of Civil Procedure or applicable law that may become known during the course of litigation, including discovery, trial, or otherwise.

16. Defendant reserves the right to amend its answer to add defenses which may become known during the course of this action, including the defense of after-acquired evidence.

41

WHEREFORE, Defendant requests that the Court dismiss Plaintiff's Amended Complaint with prejudice, enter judgment in Defendant's favor, award Defendant its attorney's fees and costs, and for any further relief the Court deems just and proper.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/    Kerri S. Reisdorff

Kerri S. Reisdorff,        MO #51423
Chris R. Pace            MO #47344
AnnRene Coughlin,    MO#67962
4520 Main Street, Suite 400
Kansas City, MO  64111
(816) 471-1301
(816) 471-1303 (*Facsimile*)
kerri.reisdorff@ogletree.com
chris.pace@ogletree.com
annrene.coughlin@ogletree.com

**ATTORNEY FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 17th day of January 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Chad C. Beaver
Beaver Law Firm, LLC
1600 Genessee Street, Suite 920
Kansas City, MO 64102
(816) 226-7750
(816) 817-0540 (*Facsimile*)
cbeaver@beaver-law.com

**ATTORNEY FOR PLAINTIFF**

/s/   Kerri S. Reisdorff
**ATTORNEY FOR DEFENDANT**

41484100.1

42