# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

TONYA MANGELS,               )

                               )

              Plaintiff,        )

                               )

          v.                   )     Case No. 4:19-cv-00834-BP

                               )

AMERICAN MULTI-CINEMA, INC.,   )

                               )

             Defendant.     )

## DEFENDANT AMERICAN MULTI-CINEMA, INC.'S SUGGESTIONS IN SUPPORT OF MOTION FOR SANCTIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... III

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND AND TIMELINE ...................................................... 3

A.    Timeline of Key Events Leading to AMC's Subpoena of Pursell Text Records. ............................................................................................................ 3

B.    The Parties Confer on AMC's Concerns Related to Mangels' Responses to AMC's Written Discovery. ..................................................................................... 5

C.    Kathy Weekley is Deposed and Subsequently Produces Texts with Mangels that Mangels Did Not Produce to AMC. ............................................. 5

D.    Concerned that Mangels Has Not Produced All Relevant Text Messages, AMC Seeks a Forensic Inspection of Mangels' Phone and Pursell's Cell Phone Records. ....................................................................................................... 7

E.    T-Mobile Responds to the Subpoena and its Records Indicate that Mangels Texted with Pursell Numerous Times. ............................................... 10

F.    AMC Seeks Clarification About the Conflict Between What She Represented and What the T-Mobile Records Showed, but Mangels Cannot Provide Any. ........................................................................................................ 12

ARGUMENTS AND AUTHORITIES ................................................................. 14

A.    Rule 37(e) Standards. ....................................................................................... 15

1.    Mangels failed to preserve text messages that were relevant and responsive to AMC's discovery requests. ........................................................................... 16

2.    Enhanced sanctions, such as allowing the jury to draw adverse inferences from the missing evidence, are warranted because the evidence suggests the loss of the texts was intentional. ..................................................................... 17

B.    Inherent Authority Standards. ......................................................................... 20

CONCLUSION AND RELIEF REQUESTED ..................................................... 20

Case 4:19-cv-00834-BP   Document 128   Filed 11/29/21   Page 2 of 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auer v. City of Minot*,
    896 F.3d 854 (8th Cir. 2018) ...................................................................16

*E\*Trade Sec. LLC v. Deutsche Bank AG*,
    230 F.R.D. 582 (D. Minn. 2005).............................................................14

*Morris v. Union Pac. R.R.*,
    373 F.3d 896 (8th Cir. 2004) ...................................................................17

*In re Peters Co., Inc.*,
    606 B.R. 803 ............................................................................................18

*Schlafly v. Eagle Forum*,
    970 F.3d 924 (8th Cir. 2020) ...................................................................15

*Sentis Grp., Inc. v. Shell Oil Co.*,
    559 F.3d 888 (8th Cir. 2009) ...................................................................15

*SL EC, LLC v. Ashley Energy, LLC*,
    No. 4:18-CV-01377-JAR, 2021 WL 4281293 (E.D. Mo. Sept. 21, 2021)......15, 16, 17, 19, 20

*Systems Spray-Cooled, Inc. v. FCH Tech LLC*,
    2017 WL 10154221 (W.D. Arkansas Feb. 22, 2017) ............................20

**Statutes**

Equal Pay Act .......................................................................................................3

Title VII ..........................................................................................................3, 18

**Rules**

Fed. R. Civ. P. 37(e)(1)...........................................................................15, 16, 17, 20

Fed. R. Civ. P. 37(e)(2)...........................................................................16, 17, 19, 20

Federal Rule of Civil Procedure 37(e) .................................................1, 14, 15, 20

Rule 26 .................................................................................................................18

Rule 26(a)(1) ...........................................................................................1, 4, 16

# INTRODUCTION

AMC seeks sanctions against Plaintiff Mangels under Federal Rule of Civil Procedure 37(e) and the Court's inherent authority because she has failed to preserve critical evidence – specifically hundreds of text communications sent to and from her phone to Michael Pursell's phone – and now, apparently, that evidence is gone and cannot be recovered. Further, there is compelling evidence that the loss of this evidence was not accidental or inadvertent, but was a purposeful maneuver by Mangels to keep AMC (and the Court and jury) from seeing her communications with Pursell that would undermine Mangels' pay-equity/discrimination claims and her retaliation claims, both substantively and as a matter of impeachment.

As the Court is well-aware, Michael Pursell is an important witness with knowledge on many issues. Both parties identified him in their Rule 26(a)(1) disclosures. The nature of his relationship with Mangels is highly relevant for multiple reasons – including but not limited to the fact that the jury should be able to assess bias/motive behind any of Pursell's testimony regarding his job duties relative to Mangels and the nature of his relationship with Mangels. AMC sought to discover evidence on these issues from the outset, issuing written discovery to Mangels specifically asking for texts/electronic communications she had with Pursell. ***Mangels has never produced a single text between her and Pursell, notwithstanding new evidence that hundreds of texts were exchanged—including texts throughout this lawsuit.***

At first, it was unclear if Mangels' position was (a) that she had such texts, but had withheld them based on her own self-determination they were irrelevant, or (b) she simply did not have any text regardless of their relevance. In August 2020, AMC's counsel issued a golden rule letter to Mangels regarding the specific request seeking clarification on her position. During those communications, Mangels' counsel orally represented he had not reviewed Mangel's devices for the text messages himself, but that Mangels claimed she "did not have anything." Based on this

representation, AMC trusted Mangels did not have possession of any text messages with Pursell – or any other person which were relevant to this lawsuit.

During discovery (in early March 2021), AMC learned through a third-party witness Kathy Weekley that the witness had texted with Mangels and at least some of those texts related to Mangels' lawsuit.  Even with this discovery, Mangels still did not produce all of the text messages she had with this witness including texts that were exchanged during the course of litigation concerning expected deposition topics. When confronted with the fact her production omitted communications that Weekley had provided, Mangels' only explanation was that "my kiddo is on my phone all the time . . . sometimes she's messing with stuff . . .  I sometimes just delete stuff after I read it." Concerned that Mangels' "self-collection" of ESI was inadequate or that texts with other witnesses may have been deleted, AMC then requested to forensically exam Mangels' phone. In an effort to ward off such an examination, Mangels supplemented her document production and represented to AMC that, as of May 6, 2021, she had now produced "all texts on her phone with any current or former AMC employees *regardless* of whether those communications have anything to do with this case." (emphasis by Mangels).  ***But, even with relevance objections having been withdrawn, Mangels did not produce any texts between Pursell and Mangels.*** Relying on the accuracy of Mangels' representations that "all texts" had been produced, AMC agreed to forego the time and expense of a forensic inspection – but issued a subpoena to T-Mobile for Pursell's phone records to confirm whether there was a record of communications that had possibly existed, but had been since deleted.  Mangels did not object to the subpoena.

It took several months for T-Mobile to respond, but once T-Mobile produced Pursell's records, they directly contradicted Mangels' testimony and her repeated representations (through counsel). The records revealed that Pursell and Mangels had communicated heavily by text for

2

years. More specifically, they showed over 1400 texts between Pursell's phone and Mangels' phone. Pursell and Mangels had not only been texting consistently going back to the outset of the case (when AMC served its discovery requests) ***but had continued to text each other right up until the day Mangels made her supplemental production in early May 2021.*** This means not only that Mangels misrepresented the existence of texts with Pursell, but that she had deleted them after being on notice that the texts had been requested by AMC.

AMC asked Mangels for an explanation as to why none of the texts reflected in the phone records had been produced. In those discussions, Mangels has unequivocally represented that she does not have any texts identified in the phone records. Although the records show they existed, some as recently as the week before the supplemental production, they are gone now and cannot be restored. Considering Mangels' strong motive for not wanting AMC to see texts between her and Pursell, and the timing of underlying events, it is reasonable to conclude that the loss of the text evidence was not inadvertent, but rather a purposeful maneuver intended to keep AMC from getting it. AMC seeks relief accordingly.

## FACTUAL BACKGROUND AND TIMELINE

Well before Mangels sued, it was obvious that Pursell would be a key witness given he was her primary comparator for her Equal Pay Act and Title VII claims. From the outset of discovery, AMC sought to obtain evidence regarding Mangels' communications with Pursell. ***Despite specific discovery requests seeking such communications, Mangels has never produced a single text or other electronic communication exchanged solely between her and Pursell.***

### A. Timeline of Key Events Leading to AMC's Subpoena of Pursell Text Records.

**February 20, 2020.** AMC propounds its First Request For Production of Documents to Plaintiff and Interrogatories. RFP 24 asked for "Any texts, instant messages, or other electronic

3

and/or written communications that you sent or received from Michael Pursell from January 1, 2017 to the present." Exhibit 1 (Excerpts from AMC's First Request for Production), No. 24. Additionally, several RFPs ask for communications, including texts, that related to the allegations in the case/Amended Complaint. Exhibit 1, Nos. 13, 15, 16, 20. And AMC's Interrogatory No. 21 sought a detailed written explanation from Mangels for certain responsive documents, including her text messages with Pursell, "that have been deleted, destroyed, lost, or otherwise no longer exist," including "the date the now absent communication was made or created; the general content of the now absent communication/document; the date the now absent communication/document was deleted, destroyed, and/or lost; how the communication/document became no longer accessible; if applicable, the individuals involved in the now absent communication; and the platform used to make such communication or that once reflected the responsive document(s) (e.g., LinkedIn, Facebook, Twitter, text message, email, etc.)." Exhibit 2 (Excerpts from AMC's First Interrogatories), No. 21.

**March 6, 2020.** Mangels serves her initial Rule 26(a)(1) disclosures naming Michael Pursell and Kathy Weekley as a potential witness/persons likely to have knowledge to support her claims. Exhibit 3 (Excerpts from Plaintiff's Initial Disclosures Pursuant to Rule 26(a)(1)).

**July 10, 2020.**[1] Mangels responds to AMC's document requests and interrogatories. Mangels objected to RFP 24 (Pursell communications) on a variety of bases including that they were irrelevant. "Subject to" her objections, Mangels "affirmatively state[d] that that she does not possess any responsive information that in any way concerns, refers to, or relates to Plaintiff's termination or other allegations in her Complaint or Amended Complaint, that it any way concerns

---

[1] Upon Defendant's motion, the Court entered a stay in this case effective on April 2, 2020 until July 1, 2020. (Doc. 23.)

4

this action or its subject matter, or that Plaintiff may use to support her claims." Exhibit 4 (Excerpts from Plaintiff's Objections and Responses to AMC's First Requests For Production); Doc. 28 (Plaintiff's Certificate of Service). Consistent with this response, Plaintiff produced no text messages between her and Pursell.

### B. The Parties Confer on AMC's Concerns Related to Mangels' Responses to AMC's Written Discovery.

On August 24, 2020, AMC issued Mangels a "golden rule" discovery dispute letter regarding her objections to several written discovery requests, including the request seeking all text messages and other electronic communications between her and Pursell. AMC wrote: "Plaintiff denies possessing any responsive documents (in any medium) that relate to any allegation in her Complaint and First Amended Complaint. Please confirm Plaintiff's denial is accurate. Please also review Plaintiff's response to Interrogatory No. 21 and confirm that response is accurate in light of Plaintiff's response." Exhibit 5 (AMC's August 24, 2020 Golden Rule Letter to Mangels).

Mangels' counsel responded to this letter by requesting a phone call with AMC's counsel. On October 6, 2020, a call between Chad Beaver (for Mangels) and Kerri Reisdorff and AnnRene Coughlin (for AMC) was held. Exhibit 6 (Declaration of AMC's Counsel, AnnRene Coughlin). During this call, Mangels' counsel represented that he had "quizzed" Mangels at length about her communications with Pursell but she denied that any related to the case. *See id.* Mangels' counsel also confirmed he did not personally review Mangels' communications with Pursell to confirm whether they were responsive; instead, he relied upon Mangels representations only. *See id.*

### C. Kathy Weekley is Deposed and Subsequently Produces Texts with Mangels that Mangels Did Not Produce to AMC.

**March 3, 2021 to March 24, 2021.** Kathy Weekley is deposed (as a result of Mangels' subpoena) on March 3, 2021, and testifies that she has texted periodically with Mangels and, at

times, about matters related to Mangels' allegations in this lawsuit. AMC immediately contacted Mangels' counsel to discuss why the text communications between Weekley and Mangels were not produced. AMC also served a subpoena on Weekley to produce her text communications with Mangels. Doc. 49 (Notice of Intent to Serve Subpoena to Weekley).

On March 18, 2021, Mangels produced what she claimed were all text messages in her possession with Weekley regardless of relation to this lawsuit. On March 24, 2021, Weekley provided her response to AMC's subpoena. ***The texts that Weekley provided included several that Mangels had not produced*** – including texts in which Mangels tells Weekley what would be asked about when Mangels' attorney deposed her,[2] giving Weekley suggestions about how to resolve her legal claims against AMC,[3] and suggesting in that context that "media coverage is a powerful thing and would help us both" with AMC.

**March 25, 2021.** Mangels is deposed and questioned about the discrepancy between the texts that she had produced and those that Weekley had provided. When asked, "Do you have any explanation to the court or the jury of why there's missing text messages?" Mangels had none other than to speculate that "my kiddo is on my phone all the time. Like, I don't – she's messing with my phone so sometimes she's messing with stuff. I don't know if that had any impact with this. Sometimes I just delete stuff just after I read it if I'm just sitting there swiping or I hit delete or I didn't want to save something." Exhibit 7 (Mangels Deposition), pp. 379-380.

---

[2] Text messages that do not appear in Mangels' production, but were produced by Weekley, include texts from Mangels to Weekley that state "AMC doesn't ask any questions" and "It will be short. Maybe an hour. More about ur experience, men vs. women, Carla, Craig."

[3] Mangels sent Weekley a text that states "Ask what they want to make this go away," however, this text message does not appear in Mangels' production.

When asked about why she did not produce other text messages that could be responsive to AMC's written discovery, and specifically AMC's 2019 investigation, Mangels initially said, "I don't have those text messages," then backtracked and said "Or I don't, I don't even recall any text messages about the investigation. I might have texted with my team in general." Exhibit 7 at 33:10-25. She then testified she does not "save all [her] text messages." Exhibit 7 at 36:2-6.

### D. Concerned that Mangels Has Not Produced All Relevant Text Messages, AMC Seeks a Forensic Inspection of Mangels' Phone and Pursell's Cell Phone Records.

**April 13, 2021.** Reasonably concerned that Mangels might not have produced other relevant ESI beyond the missing Weekley texts, AMC issued a Second Request for Production to Mangels, asking her to produce her mobile phone (and other devices) for forensic inspection. Doc. 72 (showing date that Second RFP was served).

**May 6, 2021.** Mangels serves supplemental responses to AMC's First Requests For Production. Doc. 82. After objections and narrative that goes on for 28 single-spaced lines, the Supplemental Response to RFP 24 (the RFP seeking text messages between her and Pursell) Mangels states: "…**Plaintiff is electing to simply produce all text messages on her phone with any current or former AMC employees *regardless* of whether those communications have anything to do with this case**. *See* MANGELS001704-001978. Plaintiff does not possess any other text communications with current or former AMC employees other than that has been produced on the attached CD-ROM." (bold emphasis added, italics in Mangels' original response). Exhibit 8, pp. 2-3, No. 24. (Plaintiff's First Supplemental Objections and Responses to Defendant's First Request For Production Of Documents).

The documents referred to in Mangels' supplemental responses and produced as MANGELS001704-001978 included printed text communications between Mangels and over 30 current and former AMC employees[4] – *but none exclusively to or from Pursell*.

**May 13, 2021.** Mangels responds to AMC's Second Request For Production, objecting to the request for a forensic inspection of her phone. In her objections, Mangels represents (again) that "**in light of Defendant's efforts to serve this invasive request for a forensic examination of Plaintiff's phone . . . Plaintiff elected on May 6, 2021 to simply produce all text messages on her phone with any current or former AMC employees *regardless* of whether those communications have anything to do with this case.**" Exhibit 9 (Plaintiff's Objections and Responses To Defendant's Second Request For Production of Documents) (bold emphasis added, italics in Mangels' original response). That is, Mangels was claiming an inspection of her phone was unwarranted because "all text messages" with current or former AMC employees (including Pursell) had been produced and Mangels was not withholding any such text for any reason.

**May 24, 2021.** AMC's counsel emails Mangels' attorney a Notice of Intent to Serve Subpoena on T-Mobile seeking Pursell's phone records reflecting communications between Pursell's phone and Mangels' phone. Mangels did not object. AMC then issued the subpoena. Shortly thereafter, T-Mobile contacted AMC's counsel to clarify that it could not limit its response

---

[4] Consistent with the assertion in the Supplemental Response that Mangels was producing "all text messages" with AMC employees "regardless of whether those communications have anything to do with the case," the production included texts concerning trivial and obviously irrelevant communications. Mangels' production confirmed that Mangels was, in fact, providing all existing messages without filtering them for self-determination of relevance.

to certain phone numbers, and that AMC would need to reissue a subpoena for all of Pursell's phone records for a particular time frame.[5]

**June 3, 2021.** In a follow-up to golden rule communications regarding, in part, Mangels' objection to a forensic examination of her phone, Mangels' counsel emailed AMC's counsel and wrote, in relevant part:

> "[I]n light of Defendant's invasive request for a forensic examination, we elected on May 6, 2021 to simply produce all text messages on plaintiff's phone with any current or former AMC employees regardless of whether those communications have anything to do with this case. *See* MANGELS 001704-001978. All of that information has now been provided. We also assured you that Plaintiff does not possess any other text messages with current or former AMC employees other than what was provided in Plaintiff's May 6, 2021 supplemental production, and I explained the process of how we professionally downloaded that information from Plaintiff's phone and produced it in a cleaner/sequential format." Exhibit 10 (June 2-7, 2021, Emails between K. Reisdorff and A. Coughlin and Chad Beaver).

AMC's counsel responded by reminding Mangels' counsel that in response to:

> "…ROG 21, your client swore under oath in her response that she has not 'deleted' any documents or communications responsive to RFP 20, 21, 23-25 – and we relied on that representation. She confirmed the accuracy of that statement in her deposition. If that testimony is not correct (either now or then) your client has/had an obligation to supplement her response – and affirmatively tell us and put us on notice so we can/could decide what if any action is required. That's not subject to compromise or debate. So, I am simply asking you to confirm that her testimony is still accurate or immediately serve a supplemental response." Exhibit 10.

At no time thereafter has Mangels served a supplemental response to ROG 21 or claimed that she was withholding text messages between herself and any current or former AMC employee. The same day, Mangels refused to execute a declaration proposed by AMC that would have

---

[5] In response to T-Mobile's communication, on June 3, 2021, AMC's counsel also served a new Notice of Intent to Issue Subpoena for "All documents and records reflecting or evidencing any cell phone calls and text messages (including both MMS and SMS messages), placed by phone number 267-314-1902 between the dates of January 1, 2017 and May 25, 2021). Exhibit 18 (Defendant's June 3, 2021 Notice of Intent to Serve Subpoena). Mangels did not object to the revised subpoena being issued.

required her to confirm "(1) all the steps she went through to locate responsive texts; (2) she has produced all responsive text messages in her possession; and (3) what responsive information no longer exists (and why), and when the data was lost." Exhibit 10 (Beaver June 3 email rejecting proposal in June 2 email from Couglin regarding proposed affidavit).

**June 7, 2021.** In response to AMC's e-mail on June 3, 2021 regarding communications between AMC and Mangels about the conspicuous absence of any Pursell-Mangels texts in the May 6th supplemental production, Mangels' counsel states to AMC: "I will once again represent to you (as we have previously represented to you) that **Tonya elected on May 6, 2021 to simply produce all text messages on her phone with any current or former AMC employees regardless of whether those communications have anything to do with this case. All of that information has now been provided. Tonya does not possess any other text messages with current or former AMC employees other than what was provided in Plaintiff's May 6, 2021 supplemental production**." Exhibit 10 (June 7 email from Beaver to Reisdorff)(emphasis added). In the same email, Mangels' attorney also states: "She also has retained all of the text messages on her phone, and has not deleted any of them." Exhibit 10.

### E. T-Mobile Responds to the Subpoena and its Records Indicate that Mangels Texted with Pursell Numerous Times.

**August 9, 2021.** T-Mobile responds to AMC's subpoena, producing two Excel files containing information about activity associated with Pursell's phone number – which is described on the T-Mobile records as the "MSISDN." One of the Excel files contains information for activity from May 27, 2017 through March 29, 2019. *See* Exhibit 11 ("T-MOBILE-000005 - 2673141902 CDMA CDR.xlsx." The other Excel file contained information for activity from August 8, 2019 to May 25, 2021. Exhibit 12 ("T-MOBILE-000006 - CDR_Mediations_2673141902_9356402. xls"). (Exhibits 11-12, native Excel files have been submitted to the Court via thumb drive.) The

10

content of the two Excel files is similar but differs slightly in how it is described and formatted. For instance, some of the column headings have differing names/abbreviations/descriptions. Although the category descriptions are generally clear and self-evident, T-Mobile also provided a "business records" attestation and materials on "Interpreting Call Detail Records" applicable to the two Excel files. Exhibit 13 (Sworn certification from Amy Jo Ware of T-Mobile's Law Enforcement Group dated Aug. 9, 2021) and Exhibit 14 ("Interpreting Call Detail Records" numbered T-Mobile-00002-3 and "Interpreting Call Detail Records CDMA" numbered T-Mobile 000004).

Consistent with what was covered by the subpoena, Exhibits 11 and 12 contain text about activity not just between Pursell's phone and Mangels' phone, but also Pursell's communications with others. For ease of review and analysis of Pursell-Mangels communications, AMC's attorneys combined the data in both Excel files provided by T-Mobile to create an Excel file that only contained activity between Pursell's phone and Mangels' phone numbers – filtering out activity that was not identifiable with Mangels. *See* Exhibit 15 (T-Mobile Records between M. Pursell and Mangels only.xlsx) and Exhibit 16 (Declaration of Jill Miller). The T-Mobile records indicate:

- From May 29, 2017 through March 26, 2019, there were **769 texts** exchanged between Pursell's phone and Mangels' phone.[6]

- From July 28, 2020 to May 24, 2021, there were **700 texts** exchanged between Pursell's phone and Mangels' phone.[7]

---

[6] See Exhibit 15, Sheet 1, ("5-29-17 to 3-26-19") (listing 769 rows containing activity listing Text Detail as "Call Type."). Exhibit 15, a native Excel file, is being filed via thumb drive. See also Exhibit 15A, which is a .pdf file of the 769 rows of text activity and Exhibit 16 (Jill Miller Dec., ¶ 6).

[7] See Exhibit 15, Sheet 2 ("7-28-20 to 5-24-21") (containing 691 rows with activity listing SMSC as designated "Call Type," 5 rows listing mSTerminatingSMSinMSC as designated "Call Type" and 4 rows listing mSOriginatingSMSinMSC as designated "Call Type."). See also Exhibit 15B, which is a .pdf file of the 700 rows of text activity and Exhibit 16 (Jill Miller Dec., ¶ 7).

11

Of the 700 texts in this later period, there is consistent text activity through May 7, 2021 (i.e. **the day after** Mangels served her supplemental responses). *See* Exhibit 15 generally, and Sheet 2 ("7-28-20 to 5-24-21") sorted by "Date" (Column A); Exhibit 15B. The records also showed that Mangels and Pursell had been texting throughout November and December 2020 while the parties were working to schedule Pursell's deposition; exchanged 13 text messages (and two phone calls, totaling nearly 1 hour in length) on December 1-2, 2020 ahead of Pursell's December 3, 2020 deposition; texted 14 times on March 4, 2021 (the day after Weekley was deposed); and texted 8 times on May 6 and 7, 2021 (i.e. the day of and immediately after Mangels' supplemental production). *See* Exhibit 15 generally, and Sheet 2 ("7-28-20 to 5-24-21") sorted by "Date" (Column A); Exhibit 15B.

In sum, ***although the T-Mobile records indicate that Pursell and Mangels texted consistently right up until the day she provided her supplemental production responses (May 6th) she had not produced a single text with Pursell***. There was an obvious conflict between what Mangels has consistently represented (i.e. that she had produced "all texts" with any current or former AMC employees "regardless whether they had anything to do with the case") and what the T-Mobile records showed.

### F.    AMC Seeks Clarification About the Conflict Between What She Represented and What the T-Mobile Records Showed, but Mangels Cannot Provide Any.

Beginning in late August 2021, AMC engaged with Mangels' counsel, pointing out the serious conflict between the T-Mobile records and Mangels' repeated representations to AMC. For instance, AMC wanted to know whether – despite the representations to the contrary – Mangels had nevertheless withheld texts with Pursell from her production on a self-determination of relevance. After laying out the timeline and problem as noted above, AMC's attorneys summarized what the evidence showed and asked Mangels' attorney several questions:

"To summarize, we now know the following about texts between Pursell and Mangels:

(a)     they once existed;

(b)     they are responsive to specific discovery requests (e.g. RFP 24) served in February 2020;

(c)     they have not been produced – even though per your June 7th email "all text messages on her phone with any current or former AMC employees" were supposedly provided "regardless of whether those communications have anything to do with this case."

Relying on the statements made in P's First Supplemental discovery responses served on May 6th and your June 7th email, AMC is left to conclude that Mangels purposely deleted texts between herself and Pursell well after a duty to preserve them arose. AMC is evaluating whether and how to present this issue to the Court, but, of course, first wanted to get any information from you that you believe we should know.  Among any other information you think we should know in our analysis, here are some questions we hope you will be able to answer:

1.      Why haven't the texts reflected in the phone records been produced?

2.      If Mangels deleted any of them, when did she do that – and why?

3.      Why was Mangels able to produce texts with other AMC former/current employees, but not those between her and Pursell?

        a.      (Note: This suggests it was not a matter of a preservation mistake – she still had texts with others, which she has produced. So, the loss of the Mangels-Pursell texts would appear intentional, not inadvertent.)  If Mangels' explanation for why any of the texts are gone is that they were inadvertently lost due to regular retention practices, then please let us know what steps Mangels took to ensure preservation of text data, and when she implemented those measures).

4.      Although AMC is concerned about how any relevant evidence/communications were lost, the failure to provide her text communications with Pursell that occurred in the lead up to the May 6th production is especially eyebrow-raising – absent another explanation, a reasonable inference – the most reasonable inference – is that she deleted these texts *specifically to keep them from being part of the data captured by the software program that was used to extract them for the May 6th production.*

5.      Now that we have proof that Mangels and Pursell were texting as recently as May 7th, can you confirm that there are no other texts between them since the May 6th production?

13

      a.      If there are, will you be supplementing your production or other discovery responses?

6.      Considering the volume and specificity of the phone records, will Mangels be amending or supplementing her response to Interrogatory 21, and/or correcting her deposition testimony that she "didn't know" if she deleted texts with AMC employees (other than Kathy Weekley)?

7.      Would you agree to now allow a forensic examination of Mangels' cell phone – in order to determine whether the missing texts can "be restored or replaced through additional discovery" for purposes or FRCP 37(e)?"

Exhibit 17 (August 30, 2021 email from Matula to Beaver).

Counsel exchanged additional correspondence, and ultimately met in-person on September 30, 2021 for almost an hour to review the T-Mobile records together. Mangels' counsel could not sensibly explain why the phone records show Mangels and Pursell texting over 1,400 times –including texts right up until her May 6th production – yet she has produced none of them. As conveyed by her counsel, Mangels continued to deny intentionally deleting any Pursell messages, also steadfastly maintaining there are none on her phone (to be produced). Mangels has suggested that she "direct messaged" with Pursell through one or more social media platforms, such as Twitter, but this does not explain the phone records, which reflect SMS and other text messages (not Twitter or other social media messages).[8] Ultimately, Mangels' counsel confirmed that, despite what the T-Mobile records show, Mangels no longer has any of those text messages on her phone or otherwise.

## ARGUMENTS AND AUTHORITIES

"The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." *E*Trade Sec. LLC v. Deutsche Bank*

---

[8] Mangels has not produced any "direct messages" between herself and Pursell via Twitter or any other social media.

*AG*, 230 F.R.D. 582, 588 (D. Minn. 2005)(citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739,746 (8th Cir. 2004)). When a party fails to preserve relevant evidence, the Court may assess sanctions under Federal Rule of Civil Procedure 37(e) and its inherent authority. The Eighth Circuit has advised that the "best practice is to keep the structured analysis for a particular rule separate from the relatively unstructured analysis associated with inherent authority." *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir. 2009). Eighth Circuit has also held that a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned" under the rules. *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (citation omitted). Accordingly, this Court should first consider if sanctions for Mangels' destruction of electronically stored information ("ESI") are warranted under Rule 37(e), and second, "whether sanctions are appropriate pursuant to this Court's inherent authority." *SL EC, LLC v. Ashley Energy, LLC*, No. 4:18-CV-01377-JAR, 2021 WL 4281293, at *2 (E.D. Mo. Sept. 21, 2021).

**A.     Rule 37(e) Standards.**

Rule 37(e) offers two routes for imposition of sanctions if ESI which "should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," and such ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e)(1). First, "upon finding prejudice to another party from loss of information," the Court may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The range of sanctions available under this section of the rule is "quite broad" and "[m]uch is left to the court's discretion." *Ashley Energy*, 2021 WL 4281293, at *3)(citation omitted).

Second, the Court may issue more substantial sanctions such as an adverse inference instruction or outright dismissal, but "only upon finding that the party acted with the intent to

deprive another party of the information's use in the litigation." *Id.* (citing Fed. R. Civ. P. 37(e)(2); *see Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018) (holding "intentional, bad-faith" misconduct required to impose sanctions under Rule 37(e)(2)). The Eighth Circuit has repeatedly held that sanctions authorized under Rule 37(e)(2) are only justified upon a finding of "intentional destruction of evidence indicating a desire to suppress the truth." *Id.* (citing *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (citation omitted)).[2] But intent "is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Id.* (citing *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)).

### 1. Mangels failed to preserve text messages that were relevant and responsive to AMC's discovery requests.

On February 20, 2020, AMC propounded discovery requesting Mangels' texts and other electronic communications with Pursell. But Mangels' duty to preserve texts with Pursell arose long before then. From the outset of this lawsuit (actually, well before), she knew he would be a key witness on many issues and AMC would likely seek discovery of their communications. Indeed, Mangels identified Pursell as a witness in her Rule 26(a)(1) disclosures, and AMC ultimately did so too.

The T-Mobile phone records establish that such text messages – hundreds of them – existed at one time, including as recently as early May 2021. The text messages are responsive to RFP 24 (served in February 2020). None of them have been produced. Mangels' counsel has now clarified that there are no longer any such messages on Mangels' phone and she does not otherwise have possession, custody, or control of them. At a minimum, sanctions under Rule 37(e)(1) are warranted because texts "should have been preserved in anticipation or conduct of litigation" and

have been lost because a party "failed to take reasonable steps to preserve [them]," and such ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e)(1).

### 2. Enhanced sanctions, such as allowing the jury to draw adverse inferences from the missing evidence, are warranted because the evidence suggests the loss of the texts was intentional.

Enhanced sanctions – such as adverse inferences or dismissal – are warranted under Fed. R. Civ. P. 37(e)(2) when a party has "acted with the intent to deprive another party of the information's use in litigation." Such intent "is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris*, 373 F.3d at 902. The question before this Court is whether Mangels intentionally deprived AMC of ESI. *Id.* at *5. All signs suggest she has.

As a threshold matter, the Court should assess Mangels' intent regarding the missing Pursell texts considering her conduct with regard her failure to produce all of her texts with Kathy Weekley. Mangels' excuse – that her child was "messing around" on her phone and happened by chance to delete specific texts about what Weekley would be asked during her deposition – is not credible. It is much more reasonable to believe that Mangels withheld or deleted the missing texts – and but for a subpoena to Weekley for her texts, AMC would never had otherwise known that Mangels' production was incomplete. She did not realize should would get caught.

And considering the underlying issues involving Pursell and Mangels, she has a strong motive for intentionally trying to keep AMC from discovering potentially incriminating or impeaching information that may exist in their text communications. *See Ashley Energy*, 2021 WL 4281293, at *5)(finding that sanctions were warranted under section (e)(2) because, among other things, the offender had a "clear motivation" to hide the missing evidence). Pursell is Mangels' primary and highest paid male comparator for purposes of her wage discrimination claims. She

relied on his testimony regarding the nature of their "collaboration" to oppose AMC's Motion for Summary Judgment, and, based on her Rule 26 disclosures, will also do so at trial. Mangels' Title VII retaliation claim also involves Pursell and the disciplinary action each of them received in June 2018. Accordingly, Pursell's credibility and bias (particularly to testify in Mangels' favor) will be placed directly at issue. Without the evidence of their written communications – which were exchanged near critical events in this litigation, including leading up to Pursell's deposition – AMC has been prejudiced.

Additionally, the evidence was on Mangels' phone at one time, making it "particularly available" to her. It is "well-established that the failure to a party to produce evidence . . . particularly available to that party supports the inference that the truth would be damaging to that party." *In re Peters Co., Inc.*, 606 B.R. 803, 832 n. 239 (citing *In re Biocostal Corp.* 149 B.R. 212, 214 (Bankr. M.D. Fla. 1992). The "timing of the actions that caused the evidence to become unavailable" is also a relevant factor. *Am. Builders & Contractors Supply Co. v. Roofers Mart, Inc.*, No. 1:11- CV-19 CEJ, 2012 WL 2992627, at *4 (E.D. Mo. July 20, 2012). "Destruction of critical evidence after litigation has begun is particularly egregious." *Ashley Energy*, 2021 WL 4281293, at *5)(citation omitted). The timeline here is especially incriminating. If the missing Pursell texts were all old, it may (or may not) be more reasonable to believe that they had been lost inadvertently because reasonable measures to preserve them were not taken, e.g., backing them up or changing text retention settings on her phone. ***But the T-Mobile records show Mangels and Pursell were texting consistently right up until her May 6th supplementation – a supplementation in which she produced hundreds of pages of text with other AMC employees but conspicuously none with Pursell***. This discrepancy suggests the loss of the ESI was not merely a preservation mistake–she still had texts with others, which she has produced. Why was

Mangels able to preserve and produce texts with all these other AMC employees, but not those with Pursell? Mangels was unable to answer this question.

It is reasonable to conclude that the loss of the Mangels-Pursell texts was intentional, not inadvertent. To the extent Mangels claims otherwise, presumably her opposition to this Motion will specifically answer the following questions:

1. Why has she not produced the texts reflected in the T-Mobile phone records (Exhibits 11, 12, and 15)? Put another way, if Mangels' representation, by way of counsel, on June 7, 2021 that "[s]he also has retained all of the text messages on her phone, and has not deleted any of them" is accurate, then why were no text messages with Pursell produced?

2. If Mangels deleted any of them, when did she do that – and why?

3. In producing "all texts" with any current or former AMC employee "regardless of whether those communications have anything to do with this case," why was Mangels able to produce texts with numerous AMC former/current employees, but not a single text between her and Pursell?

4. If Mangels really produced "all texts" with any current or former AMC employee "regardless of whether those communications have anything to do with this case," but none with Pursell were provided because they were no longer available, why did Mangels not provide a complete response to AMC's First Interrogatory No. 21?

5. If Mangels' explanation for why the Pursell texts are gone is that they were inadvertently lost due to regular retention practices, what steps did Mangels take to ensure preservation of text data, and when did she implement those measures?

6. Did Mangels' counsel ever personally inspect her phone for texts with Pursell, or did counsel rely on Mangels to represent what was on the phone and what texts were (and were not) selected to be produced? If counsel did personally inspect the phone, when did he do so?

Absent compelling evidence presented by Mangels to the contrary in answering these questions (presumably under oath by way of a sworn declaration or affidavit) the circumstantial evidence suggests that losing the evidence was intentional, not an accident, and that enhanced sanctions – such as an adverse inference instruction – under Rule 37(e)(2) are appropriate. *See, e.g., Ashley Energy*, 2021 WL 4281293, at *8)(dismissing certain claims based on application of

19

Rule 37(e)(2); *Systems Spray-Cooled, Inc. v. FCH Tech LLC*, 2017 WL 10154221 (W.D. Arkansas Feb. 22, 2017)(imposing adverse inference sanction and payment of attorney's fees upon finding that party acted with intent to deprive opposing party of evidence).

### B. Inherent Authority Standards.

The court has the inherent power to impose sanctions – including the sanction of dismissal – when a party has acted in bad-faith, vexatiously, wantonly, or for oppressive reasons. *Id.* (citation omitted). If sanctions are justified under Rule 37(e) it may be unnecessary. *Ashley Energy*, 2021 WL 4281293, at *5). But the Eighth Circuit has also held that federal courts are "not forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned" under the Rules. *Ashley Energy*, 2021 WL 4281293, at *7)(citing *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020)). If the court determines that the lost evidence is a product of Mangels' bad-faith conduct, then sanctions are warranted irrespective of the Rule 37(e) analysis.

### CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, AMC requests that the Court enter an order: (1) imposing sanctions against Mangels under Rule 37(e)(1) or (2) as the Court finds appropriate, including that AMC be awarded its fees for having to file this motion and regarding expenses and fees incurred in the T-Mobile subpoena; (2) instructing the jury that the texts reflected in the T-Mobile records should have been preserved and that they may infer that the texts would have been adverse/damaging to Mangels case or her credibility (or both); (3) prohibiting Mangels from offering evidence from Pursell to support her case; and (4) for any other relief the Court believes is appropriate, up to and including dismissal of Mangels' lawsuit.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ *Michael Matula*

Kerri S. Reisdorff    MO #51423
Chris R. Pace       MO #47344
Michael L. Matula    MO #47568
AnnRene Coughlin   MO #67962
4520 Main Street, Suite 400
Kansas City, MO 64111
(816) 471-1301
(816) 471-1303 (*Facsimile*)
kerri.reisdorff@ogletree.com
chris.pace@ogletree.com
annrene.coughlin@ogletree.com
michael.matula@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 29th day of November, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to:

Chad C. Beaver
Beaver Law Firm, LLC
1600 Genessee Street, Suite 920
Kansas City, MO 64102
(816) 226-7750
(816) 817-0540 (*Facsimile*)
cbeaver@beaver-law.com

**ATTORNEY FOR PLAINTIFF**

/s/ *Michael Matula*
**ATTORNEY FOR DEFENDANT**

21