# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TONYA MANGELS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:19-cv-00834-BP |
| AMERICAN MULTI-CINEMA, INC., | ) ) ) |
| Defendant. | ) ) |

## DECLARATION OF CHAD BEAVER

I, CHAD BEAVER, hereby state under oath and penalty of perjury that I have personal knowledge of the following statements that are true and accurate to the best of my knowledge and belief:

1. AMC never embarked on an effort to subpoena Michael Pursell's phone records from T- Mobile until ten (10) days prior to *third and last* discovery deadline established in this case. In its initial subpoena, AMC sought compliance by the June 4, 2021 deadline. That never happened. AMC then abandoned its initial subpoena, and issued a revised subpoena *on the date of the June 4, 2021 deadline* in clear violation of the Scheduling Orders entered by the Court. There was no chance of compliance on the very same date it was issued.

2. We now know that AMC received its initial response to the subpoena sixty-nine (69) days after the close of discovery on August 12, and AMC continued receiving information in a rolling production. It sent Plaintiff "supplemental" information eighty-eight (88) days after the close of discovery on August 31.

3. The undersigned attended the Heartland Labor & Employment CLE conference in May of this year in which Your Honor spoke as a panelist in order to share "views from the

bench" to an employment law/HR audience. Toward the end of the program, Your Honor mentioned that a significant pet peeve involves parties grasping at irrelevant or harassing discovery objectives at the tail end of the discovery phase of a case rather than focusing on the next stage of the case in order to prepare for trial based on what they have already secured.

4. AMC has produced text messages from its own employees in this case, but it has never produced a single text message from Michael Pursell.

5. When Plaintiff requested Mr. Pursell's deposition in December 2020, counsel for AMC (Mr. Pace) was still capable of coordinating directly with Mr. Pursell in order to voluntarily produce and represent him for purposes of his deposition.

6. Plaintiff sent its opening discovery requests to AMC in February 2020 and requested text messages in at least *eleven (11) separate instances* concerning various aspects of this case and its subject matter (Request Nos. 9, 10, 33, 35, 37, 39, 41, 42, 48, 49, and 50). When AMC responded in July 2020, AMC objected to producing ESI in every instance (other than email), and it further cautioned that it would only respond subject to the mutual agreements and further discussions of counsel. Plaintiff noted the July 2020 objections and responses at that time, and elected to focus on email and other discovery initiatives.

7. ***Importantly, Defendant did exactly the same thing***. In July 2020, Plaintiff raised legitimate breadth and relevance objections to AMC's written discovery, including Defendant's requests for text messages, and Defendant never commenced golden rule discussions on those objections until *8 months later* in March 2021.

8. On March 2, 2021, Plaintiff took the deposition of fact witness Kathy Weekley. On cross-examination, Ms. Weekley testified to engaging in periodic text message contact with Tonya Mangels. Two days later, on March 4, 2021, AMC sent Plaintiff a letter complaining—

2

bench" to an employment law/HR audience. Toward the end of the program, Your Honor mentioned that a significant pet peeve involves parties grasping at irrelevant or harassing discovery objectives at the tail end of the discovery phase of a case rather than focusing on the next stage of the case in order to prepare for trial based on what they have already secured.

4. AMC has produced text messages from its own employees in this case, but it has never produced a single text message from Michael Pursell.

5. When Plaintiff requested Mr. Pursell's deposition in December 2020, counsel for AMC (Mr. Pace) was still capable of coordinating directly with Mr. Pursell in order to voluntarily produce and represent him for purposes of his deposition.

6. Plaintiff sent its opening discovery requests to AMC in February 2020 and requested text messages in at least *eleven (11) separate instances* concerning various aspects of this case and its subject matter (Request Nos. 9, 10, 33, 35, 37, 39, 41, 42, 48, 49, and 50). When AMC responded in July 2020, AMC objected to producing ESI in every instance (other than email), and it further cautioned that it would only respond subject to the mutual agreements and further discussions of counsel. Plaintiff noted the July 2020 objections and responses at that time, and elected to focus on email and other discovery initiatives.

7. ***Importantly, Defendant did exactly the same thing***. In July 2020, Plaintiff raised legitimate breadth and relevance objections to AMC's written discovery, including Defendant's requests for text messages, and Defendant never commenced golden rule discussions on those objections until *8 months later* in March 2021.

8. On March 2, 2021, Plaintiff took the deposition of fact witness Kathy Weekley. On cross-examination, Ms. Weekley testified to engaging in periodic text message contact with Tonya Mangels. Two days later, on March 4, 2021, AMC sent Plaintiff a letter complaining—

for the very first time—about Plaintiff's purported failure to produce text messages with Kathy Weekley.

9. After the March 15, 2021 email exchange referenced in Plaintiff's Suggestions, parties spoke on the phone, and AMC agreed to narrow its previous requests aimed at discovering text messages to any text messages in Plaintiff's possession that directly concern or reference the allegations in this case and/or the affirmative defenses raised in Defendant's Answer. Consistent with that narrowing, Plaintiff then produced a copy of all text messages exchanged with Ms. Weekley, and Plaintiff further agreed to provide all Weekley information regardless of whether it directly concerned or referenced any issues germane to the case. That information was provided before AMC took plaintiff's deposition on March 25, 2021.

10. Importantly, at this stage of the case, Plaintiff never agreed to preserve or produce every text message ever exchanged with any current or former AMC employee regardless of whether it directly concerned or referenced the allegations in this case. Based on the clear and unequivocal nature of the parties' text message agreement, Plaintiff remained well within her rights to delete (or not retain) any text messages exchanged with current or former employees that had nothing to do with this case.

11. AMC then waited until mid-April (i.e., 1.5 months prior to the close of discovery) to serve a new set of discovery requesting an invasive forensic examination of plaintiff's electronic devices. Even at that time, however, the express language of AMC's new document request was *still limited* to text messages "**about topics related to Plaintiff's claims and/or Defendant's defenses from January 1, 2018 to present**."

12. **Importantly, Defendant never argued that it is somehow entitled to every single text message ever exchanged between Tonya Mangels and Michael Pursell—regardless of content—until after discovery was closed in this case.**

13. Plaintiff eventually objected to the new document request because an invasive forensic examination would clearly violate Plaintiff's privacy interests, because it would capture items that were irrelevant to any party's claim or defense, because it was not proportional to the needs of the case, because any possible benefit was outweighed by the burden or expense of attempting compliance, because it was over broad in time and scope, and because it implicated a significant amount of privileged discussions with Plaintiff's own counsel. In order to put AMC at ease, however, Plaintiff once again diligently worked to re-review every text message exchange in her phone with any current or former AMC employee, and Plaintiff once again confirmed her belief that she did not possesses any responsive text messages *consistent with the agreements of counsel*.

14. In light of Defendant's invasive request for a forensic examination, however, Plaintiff also elected on May 6, 2021 to simply produce all text messages on plaintiff's phone with any current or former AMC employees regardless of whether those communications had anything to do with this case. That production consisted of *274 pages worth of information*. I also explained the process of how Plaintiff professionally downloaded that information from her phone using extraction software specifically designed for that purpose, and how Plaintiff produced it to AMC in a cleaner/sequential format.

15. After Plaintiff made her decision to voluntarily produce the information on May 6, 2021, Defendant then waited until May 25, 2021 (i.e. ten (10) days prior to the close of

4

discovery) to express dissatisfaction with the production, and to insist, once again, on a forensic examination.

16. The parties next spoke on May 28, 2021. During the call, counsel for Plaintiff rehashed much of the above, and Plaintiff also inquired as to whether—in the spirit of cooperation—the parties could agree on a simple solution in order to avoid the necessity of any Court involvement. Plaintiff suggested, for example, the possibility of Plaintiff stipulating to no longer rely on Kathy Weekley as a witness at trial due to AMC's dissatisfaction with the manner in which the Weekley emails were produced. AMC's counsel (Ms. Braun) agreed to give that idea some thought with her client and respond.

17. On June 2, AMC's counsel followed up with a proposal containing six (6) separate demands that went well beyond anything Plaintiff suggested on the May 28 call.

18. Ms. Reisdorff also submitted a modified proposal that same day that, among other things, included a trial stipulation for eliminating evidence pertaining to Kathy Weekley or Ms. Weekley's Equal Pay Act allegations. Four (4) days later, Plaintiff agreed in principle to that stipulation, and between June 11 and June 21, the parties exchanged several emails in order to negotiate the terms of that stipulation.

19. On June 17, Ms. Reisdorff said, "Chad - Good afternoon. I accepted the changes you made in the Weekley declaration and added a short sentence at the end confirming that in the event of a trial the parties will submit the joint stipulation to the court for approval. I signed it on behalf of AMC. Please send back a signed copy when you have a chance." When Plaintiff received Ms. Reisdorff's email above, I was pleased to see AMC's willingness to enter into a practical compromise in order to eliminate any further debate or Court involvement, but just to

5

be sure, Plaintiff sent *one more email* in order to clarify the parties' collective understanding on the stipulation.

20. I said: "Kerri- Please confirm that this agreement resolves all remaining discovery disputes regarding AMC's request for a forensic exam of Plaintiff's phone, etc., and I will be happy to sign and send back. I assumed we are on the same page after receiving your email, but I want to make sure. Thanks, ccb". *See*, Exhibit 14 (6/17/2021-6/21/2021 email exchange). ***Thereafter, Defendant never responded.***

21. Plaintiff did not hear from Defendant again until August 30, 2021, i.e. more than *two (2) months later*, when Mr. Matula—who was never involved in any of the previous discovery conversations—emailed the undersigned.

22. Counsel for the parties also met once again on these issues—in person—on September 30, and AMC continued to insist (incorrectly) that Plaintiff somehow engaged in discovery violations.

23. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct and that I have personal knowledge of the information provided above.

_____
CHAD BEAVER

6

Case 4:19-cv-00834-BP   Document 132-1   Filed 12/09/21   Page 7 of 7